O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY ROTH, SHANA EKIN, as individuals and on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br>CHA HOLLYWOOD MEDICAL CENTER, L.P., d/b/a CHA Hollywood Presbyterian Medical Center and Hollywood Presbyterian Medical Center; CHS HEALTHCARE MANAGEMENT, L.L.C.,<br><br>　　　　　　　　Defendants. | Case No. 2:12-cv-07559-ODW(SHx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [55]** |

## I.   INTRODUCTION

On May 24, 2012, Amy Roth[1] and Shana Ekin filed a First Amended Complaint in Los Angeles County Superior Court against Defendants CHA Hollywood Medical Center and CHS Healthcare Management, LLC (collectively "HPMC"), alleging claims for failure to provide mandated meal and rest breaks, failure to pay wages when due, failure to provide accurate wage statements, and violation of California's Unfair Competition Law. After removal to this Court, Ekin moved to certify a class of nonexempt registered nurses ("RN") and licensed vocational nurses ("LVN") who worked 12-hour shifts at HPMC and did not receive two meal breaks and three rest

---

[1] Amy Roth was dismissed from this case while the action was pending in Los Angeles County Superior Court.

breaks as required by California labor law. Though Ekin contends that HPMC has uniform policies and practices that apply to all putative class members, the Court finds that the class is not presently ascertainable, there is no common issue that would resolve all class members' claims in one stroke, and individual issues would predominate over classwide determinations. The Court therefore **DENIES** Ekin's Motion for Class Certification.[2]

## II. FACTUAL BACKGROUND[3]

HPMC includes 22 departments that employ nurses. (Aug. 24 2012 Braun Dep. 64:15–25.) All RNs except for the nursing directors and director of nursing operations are nonexempt employees. (*Id.* 87:1–3.) All LVNs are also nonexempt. (*Id.* 87:9–11.)

HR Policy 504 sets forth HPMC's policy regarding rest and meal breaks and is included in its human-resources manual. (*Id.* 152:20–23; 154:10–25.) The policy provides that employees "who work shifts equal to or in excess of ten (10) hours are entitled to two (2) half (1/2) hour unpaid meal periods, unless they have signed an appropriate meal waiver form for one of the two breaks." (Braun Dep. Ex. 4.) If an employee works during a meal period, "an employee will be paid for this time as 'time worked' and may be entitled to additional amounts under applicable California wage and hour law." (*Id.*) The policy also states that employees are entitled to "one (1) ten (10) minute break every four (4) hours worked." (*Id.*) Further, employees "are entitled to three (3) rest breaks when working twelve-hour shifts." (*Id.*)

/ / /

/ / /

---

[2] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[3] The Court has reviewed each party's evidentiary objections and responses. To the extent that the Court relies upon evidence to which one or both parties have objected, the Court overrules those objections. The Court finds that the evidence upon which the Court relies is either within the declarants' personal knowledge or based on nonhearsay under the Federal Rules of Evidence.

*1. Meal breaks*

Roth, a former charge nurse, testified that she heard through word of mouth that she was to take only one meal break. (Roth Dep. 70:23–71:1.) She also discerned that HPMC's policy was to take only two rest breaks based on observing other charge nurses. (*Id.* 76:5–14.)

HPMC's charge nurses schedule the nurses' meal breaks in some departments. (Back Decl. ¶ 5; Gianan Decl. ¶ 6; Hamzie Decl. ¶ 6; Quilnet Decl. ¶ 7.) Other employees indicated that the meal breaks are not scheduled. (Cruz Decl. ¶ 5; Liu Decl. ¶ 6; Mencias Decl. ¶ 6; Moore Decl. ¶ 6; Nam Decl. ¶ 6.) Ekin adduced staff-assignment sheets that do not appear to have scheduling slots for all mandated breaks. (Whitlock Decl. Ex. 5.) But these sheets are only guidance, and nurses do not always consult them to determine when to take their breaks. (Mar. 5, 2013 Braun Dep. 48:18–25; Barkley Decl. ¶ 17; Cortez Dep. 74:13–19.)

California law mandates certain nurse-to-patient ratios, which depend upon patients' acuity. (Doyle Dep. 57:4–8.) Acuity is not a static function but rather can change from hour to hour with each patient. (*Id.* 56:8–18; *see also* Cruz Decl. ¶ 5; Dilay Decl. ¶ 5; Gianan Decl. ¶ 5; Hamzie Decl. ¶ 5; Kim Decl. ¶ 6.) Ekin submitted a declaration from Constance Doyle, Ekin's designated nursing expert, who concluded that "even without the detailed census data and the actual assignment sheets for each department, . . . the policy and practice of the Hospital is, and has been to staff nurses at the minimum needed to meet the statutory nurse to patient requirements." (Doyle Decl. ¶ 16; *see also* Barkley Decl. ¶ 10.) She also opined that "there were no relief nurses assigned" to cover breaks despite the industry standard. (*Id.* ¶¶ 17, 20.) But Doyle did notice that there was a float nurse, though she could not discern where the nurse was assigned. (Doyle Dep. 169:17–20.)

Some employees testified that they were always able to take their meal breaks. (Williams Dep. 51:13–15; Dilay Decl. ¶ 7; Gianan Decl. ¶ 8; Ijares Decl. ¶ 8; Lee Decl. ¶ 7; Leyna Decl. ¶ 8; Matz Decl. ¶ 5; Naval Decl. ¶ 7; Oro Decl. ¶ 8; Singh

Decl. ¶ 7.) Others stated that they never received a second meal break. (Akopian Decl. ¶ 5; Cortez Decl. ¶ 10; De los Santos Decl. ¶ 6; Del Rosario Decl. ¶ 9.) Some employees indicated that there was sometimes no one available to relieve them for a break. (Akopian Decl. ¶ 13; Baladad Decl. ¶ 6; Barkley Decl. ¶ 11; Cortez Decl. ¶ 5; Cuarto Decl. ¶ 9; De los Santos Decl. ¶ 9; Del Rosario Decl. ¶ 6.) Other employees used or were told to use the buddy system, meaning that one nurse would cover the other's break. (Barkley Decl. ¶ 15.)

Each department's charge nurses are usually the ones designated to cover nurses' breaks. (Mar. 5, 2013 Braun Dep. 85:8–15.) There was sometimes a recourse nurse to cover nurses' breaks as well. (Cortez Dep. 23:20–23; Villanueva Decl. ¶ 7; Mar. 5, 2013 Braun Dep. 51:16–17.) But the hospital does not specifically designate anyone as a relief nurse. (Mar. 5, 2013 Braun Dep. 86:11–12.) HPMC also does not prohibit charge nurses from having their own patient assignments. (Mar. 5, 2013 Braun Dep. 92:1–5.)

Sagra Norma Braun, HPMC's Vice President of Human Resources, admitted that there are days when nurses are not going to get proper breaks, because there are "so many patients in there that they can't take a break." (*Id.* 59:13–15.) Since the middle of 2011, the time clocks have displayed an electronic attestation stating that the employee agrees with her hours and for the day and that she has received her meal and rest breaks. (Aug. 24 2012 Braun Dep. 187:20–188:17; Mar. 5, 2013 Braun Dep. 71:23–72:3.) Before that time, employees could indicate incorrect hours, such as missed breaks, via an "E-time correction form." (Mar. 5, 2013 Braun Dep. 72:4–13.)

New employees receive a packet of forms, which includes a meal waiver. The employee may waive a second meal break if she chooses. (Aug. 24 2012 Braun Dep. 162:13–20; Braun Decl. ¶ 15.) Not all employees waive their second meal break. (*See id.* Ex. G) Of the 17 putative class members who submitted a declaration in support of Ekin's Motion, 12 signed a meal waiver. (*Id.* ¶ 15.)

/ / /

### 2. *Rest breaks*

Several putative class members testified that they were sometimes unable to take rest breaks because the hospital was too busy or there was no relief nurse. (Roth Dep. 81:23–25; Akopian Decl. ¶ 6.) Some employees voluntarily choose not to take all of their rest breaks. (*See, e.g.*, Aranas Decl. ¶ 10; Back Decl. ¶ 10; Cruz Decl. ¶ 11; Dilay Decl. ¶ 11; Ijares Decl. ¶ 11; Lee Decl. ¶ 11.) Others always take their rest breaks. (*See, e.g.*, Kong Decl. ¶ 12.) Some nurses stated that they were frequently interrupted while taking their meal and rest breaks. (Cortez Decl. ¶ 8; Cuarto Decl. ¶ 7; De los Santos Decl. ¶ 5; Del Rosario Decl. ¶ 8; Gabriel Decl. ¶ 12.)

### 3. *Shana Ekin*

Ekin testified that she was free to use her discretion to take a break when she felt it was appropriate. (Ekin Dep. 117:19–22.) Ekin testified that about 50 percent of the time there was a midshift nurse scheduled to cover breaks. (*Id.* 52:4–19.) For most days, the hospital was fully staffed, which allowed the nurses to maintain the proper nurse-to-patient ratio. (*Id.* 112:4–16.)

Ekin signed a waiver of her second meal break and understood that she could revoke it at any time. (*Id.* at 83:2–11; Kemple Decl. Ex. 16.) In the eight years that Ekin worked at HPMC, she only missed her meal break twice. (Ekin Dep. 68:24–69:2.) While Ekin documented her missed breaks, she does not recall whether the hospital paid her for those breaks. (*Id.* 69:3–11.)

### 4. *Class-certification motion*

On September 4, 2013, Defendants removed the case to this Court. (ECF No. 1.) The Court initially remanded the case, but the Ninth Circuit Court of Appeals reversed that decision. (ECF Nos. 21, 30.) This Court subsequently denied a second remand motion. (ECF No. 48.) On September 25, 2013, Ekin moved for class certification. (ECF No. 55.) HPMC timely opposed. That Motion is now before the Court for decision.

/ / /

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(a), a party seeking class certification must initially meet four requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

The proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Here, Ekin relies solely on Rule 23(b)(3), which states that a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The plaintiff bears the burden of demonstrating that the putative class satisfies each of Rule 23(a)'s elements along with one component of Rule 23(b). *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011). In that regard, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.

A district court must perform a "rigorous analysis" to ensure that the plaintiff has satisfied each of Rule 23(a)'s prerequisites. *Dukes*, 131 S. Ct. at 2551; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 131 S. Ct. at 2551. When

1 resolving such factual disputes in the context of a motion for class certification,
2 district courts must consider "the persuasiveness of the evidence presented." *Ellis*,
3 657 F.3d at 982 (holding that a district court must judge the persuasiveness and not
4 merely the admissibility of evidence bearing on class certification). Ultimately the
5 decision to certify a class reposes within the district court's discretion. *Zinser v.*
6 *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

## IV. DISCUSSION

Ekin moves to certify one class and three subclasses. She defines her general class as all "non-exempt employees who were or are employed by Defendants during any part of the proposed class period in California, and holding the title of nurse, LVN, or RN, and who, at any time during the proposed class period, worked a 12-hour shift, but excluding Clinical Supervisors and Directors." (Mot. 9.) She defines her Rest Break Subclass as all "class members who did not receive at least three duty-free ten minute rest breaks during the course of a 12-hour shift." (*Id.*) In the Meal Period Subclass, Ekin includes all "class members who did not receive mandated meal periods, because they were either late, or not provided at all, or were not duty-free for at least 30 minutes, or because no second meal period was provided." (*Id.*) Finally, the Terminated Employee Sub-Class includes all "Class Members whose employment with Defendants terminated during the Class Period." (*Id.* at 10.)

### A. Ascertainability

A class definition should be "precise, objective, and presently ascertainable," that is, the class must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotation marks omitted). But class treatment is not appropriate if "the court must determine the merits of an individual claim to determine who is a member of the class." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 555 (S.D. Cal. 2012).

/ / /

Ekin argues that one can determine who is a class member by evaluating HPMC's payroll records. She also contends that the number of missed breaks could be determined by reviewing the nurse assignment sheets and patient logs from each department. But HPMC asserts that Ekin's class definition impermissibly requires a liability determination of whether HPMC provided someone with a meal or rest break. HPMC further argues that one cannot ascertain the class from payroll records, because employees do not clock out for rest breaks, and a meal break may be provided by HPMC but not taken at the employee's election.

Defining the class in part based on whether a break "was provided" necessarily entails a legal inquiry. As the California Supreme Court held in *Brinker Restaurant Corp. v. Superior Court*, an employer "provides" a meal break when "it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." 53 Cal. 4th 1004, 1040 (2012). Whether HPMC "provided" meal breaks, that is, relieved each putative class member of all duties during those breaks, depends upon a legal determination under *Brinker*. The necessity for that individual inquiry belies class ascertainability.

In her reply, Ekin argues that even if the Court determines that she defined a "failsafe class," the Court should rewrite the class definition to avoid this result. A failsafe class is one in which the class members "either win or are not in the class." *In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 546 (N.D. Cal. 2012) (internal quotation marks omitted). The Ninth Circuit appears hostile to these failsafe classes, though it has not yet held in a published opinion that they are impermissible. *Id.*; *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010).

Even if the Court were to permit Ekin's failsafe class definitions notwithstanding the Ninth Circuit's enmity, her Rest Break Subclass and Meal Period Subclass definitions would create an unworkable, cart-before-the-horse problem.

There would be no way to send out individual notices without first making a legal determination of whether HPMC "provided" each putative class member with proper meal breaks under the *Brinker* formulation. The same problem holds true with whether a putative class member "received" at least three rest breaks. These definitional difficulties foreclose any determination that Ekin's class is "administratively feasible." *O'Connor*, 184 F.R.D. at 319.

**B.   Commonality**

Like in *Dukes*, the "crux of this case is commonality." *Dukes*, 131 S. Ct. at 2250. The Supreme Court held that Rule 23(a)'s commonality element requires a common contention that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. The focus is not just on raising common questions, "even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted).

Ekin argues that HPMC has several policies and practices that uniformly impact her putative class. First, she contends that HR Policy 504 does not comport with Wage Order No. 5,[4] because it fails to acknowledge an employee's entitlement to a rest break for every four hours worked, "or major fraction thereof." Second, she asserts that HPMC's actual policy is to permit only two rest breaks during a 12-hour shift despite nurses being entitled to three rest breaks for 12 hours worked. Ekin further argues that HPMC uniformly permits employees to be interrupted during their meal and rest breaks, thereby preventing the breaks from being duty-free. Doyle, Ekin's expert, opined that HPMC also has a standard policy of only staffing the minimum number of nurses necessary to meet each department's statutory nurse-to

---

[4] Wage Order No. 5 provides in relevant part that the "authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours *or major fraction thereof*." Cal. Code Regs. tit. 8, § 11050(12)(A) (emphasis added).

1  patient ratios, which Ekin contends precludes nurses from taking breaks. Lastly, Ekin
2  asserts that HPMC has a companywide policy of requiring all nurses to sign a waiver
3  of their second meal break upon being hired.
4        HPMC ardently disputes Ekin's alleged common questions. HPMC points out
5  that while HR Policy 504 may omit the "or major fraction thereof" language, the
6  policy specifically states that employees "are entitled to three (3) rest breaks when
7  working twelve-hour shifts." HPMC also argues that declarations from putative class
8  members show nurses taking anywhere from no rest breaks to as many as they
9  wanted. The declarations also run the gamut on meal breaks, with nurses differing on
10 whether they took two meal breaks. For those putative class members who appear on
11 payroll records to have missed a break, HPMC contends that Ekin has not offered a
12 common method of determining whether HPMC timely provided a break to a nurse
13 who then voluntarily did not take the break until later. Likewise, HPMC argues that
14 there is no way to assess if and why any putative class member worked through a
15 break. Defendants also submitted evidence of several nurses who refused to sign the
16 meal-break waiver and others who voluntarily signed it—including Ekin herself.
17       Ekin has not demonstrated a common factual thread that ties together all
18 putative class members' claims. First, HR Policy 504's validity does not constitute a
19 common question for the putative class with respect to rest breaks. While Ekin makes
20 much of the fact that the policy omits the "or major fraction thereof" language
21 contained in Wage Order No. 5, whether that omission renders the policy facially
22 invalid under the California Labor Code is not an issue in this case. Ekin limits her
23 class definition to only nonexempt nurses who "worked a 12-hour shift." (Mot. 9.)
24 With nurses working 12 hours, there is no issue of the nurses potentially not having
25 received a break at a fraction of four hours, as 12 hours evenly divides into three, four-
26 hour periods—and thus three mandated rest breaks. HR Policy 504 specifically states,
27 "Employees are entitled to three (3) rest breaks when working twelve-hour shifts."
28 / / /

1 There is simply no "fraction thereof" issue—and thus no commonality stemming from
2 HR Policy 504. *See Brinker*, 53 Cal. 4th at 1029.

3 Neither has Ekin established any uniform policy or practice that rendered each
4 putative class member too busy or unable to take statutorily mandated rest or meal
5 breaks. Many declarants testified that they frequently did not have adequate coverage
6 to take proper breaks. But many others nurses asserted that they were able to take
7 their breaks by using the buddy system or being relieved by a charge or recourse
8 nurse. The fact that some putative class members had no issue taking proper breaks
9 demonstrates that there will be no way to determine that HPMC has a uniform,
10 classwide policy of rendering employees unable to take rest and meal periods in each
11 instance. *See Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455, 463-64 (S.D.
12 Cal. 2012) ("Because of the varying declarations and conflicting facts of the putative
13 class members, Plaintiffs have failed to show that Defendants had a common policy
14 that 'prevented' employees from taking meal breaks and/or failed to 'permit and
15 authorize' employees to take rest breaks under Rule 23(a)(2).").

16 Rather, adjudication of these claims would require an individual determination
17 of whether a particular nurse was too busy, had no coverage, or both for each rest and
18 meal break to which she was entitled. When the impact of an employer's policies
19 depends on each individual employee's circumstances, class certification is not
20 appropriate. *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 586 (C.D. Cal. 2008).

21 Doyle testified that "it appears the policy and practice of the Hospital is, and
22 has been to staff nurses at the minimum needed to meet the statutory nurse to patient
23 requirements." But the Court is not persuaded that Ekin has demonstrated that
24 Doyle's opinion qualifies for admission under Federal Rule of Evidence 702.
25 Admissibility of expert testimony "entails a preliminary assessment of whether the
26 reasoning or methodology underlying the testimony is scientifically valid and of
27 whether that reasoning or methodology properly can be applied to the facts in issue."
28 *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). The testimony

must, among other things, be based on sufficient facts or data and be the product of reliable principles and methods. Fed. R. Evid. 702(b), (c).

Before giving her opinion, Doyle reviewed 11 declarations and about 42,000 staffing and assignment documents. (Doyle Dep. Errata Sheet; 66:17–23.) But Doyle did not review the acuity of any HPMC patients in coming to her opinion. (*Id.* 74:5–8.) Neither did she conduct any independent investigation. (*Id.* 82:11–25.) She further admits that Ekin did not provide Doyle with patient-census information, and if Doyle had received this information, she could have "come to very definitive conclusions as to the compliance by the Hospital with the required nurse to patient ratios." (Doyle Decl. ¶¶ 14–15.)

Without having this patient information, it is difficult to understand how Doyle could come to any reliable inference about whether HPMC only staffed the minimum number of nurses to meet the statutory ratios. One cannot determine a nurse-to-patient ratio without having the patient side of the calculation. And without determining this alleged bare-staffing practice, there is no way to tell on a classwide basis whether HPMC invariably prevented all putative class members from taking rest and meal breaks. Indeed, several putative class members indicated that they were able to take proper breaks—a factor counseling against a commonality determination.

Even if there were some theoretical way to determine the nurse-to-patient ratio for each of HPMC's 22 departments that employ nurses, those calculations would vary depending on the time each nurse took her breaks. One would also have to determine on an individual basis whether the particular department was at that discrete point in time minimally staffed to meet the ever-shifting ratio. There is nothing "common" about that individualized inquiry.

Ekin's assertion that nurses were frequently interrupted during their breaks also does not satisfy the commonality requirement. There is no way to determine "in one stroke" whether a particular break for a particular putative class member was interrupted and to what degree. The nurses themselves differ on whether these

interruptions prevented them from taking duty-free breaks. Ekin did not, for example, show that a putative class member would invariably face a particular type of interruption during each break.

Further, Ekin alleges that HPMC has a common policy of requiring all employees to sign a meal waiver as a condition of employment. An employer's blanket requirement that all employees sign a waiver of a second meal break may satisfy the commonality requirement. *See Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220, 234 (Ct. App. 2013). But HPMC submitted evidence that at least 28 employees refused to sign the waiver. (Braun Decl. Ex. G.) That substantial number squarely contradicts Ekin's condition-of-employment assertion.

The Court therefore finds that Ekin has not established any common contention the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

Ekin's other causes of action suffer a similar definitional fate. She admits in her Motion that her failure-to-pay-wages-when-due, failure-to-provide-accurate-wage-statements, and Unfair Competition Law claims all derive from HPMC's alleged failure to provide proper rest and meal breaks. Since the Court finds that Ekin has not demonstrated the requisite commonality for her break claims, the same finding holds true for Ekin's remaining claims.

## C. 23(b)(3) requirements

The Supreme Court has held that Rule 23(b)(3)'s predominance inquiry assesses "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance element is "far more demanding" than Rule 23(a)'s commonality requirement. *Id.* at 624. Under the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, damages must be "capable of measurement on a classwide basis" to establish predominance. 133 S. Ct. 1426, 1433 (2013). Otherwise, questions of "individual damages calculations will inevitably overwhelm questions common to

the class." *Id.* Rule 23(b)(3) also requires that class-action treatment be the superior method of adjudicating the dispute.

Ekin asserts that because all of the putative class members' claims result from HPMC's same employment practices, common liability issues predominate. She also cites to the dissent in *Comcast* and argues that the Supreme Court's decision should not be read to impose a requirement that damages be measurable on a classwide basis.

HPMC contends that one cannot use the nurse-to-patient ratio to determine whether the putative class members were too busy to take breaks, because one cannot know what the ratio was at any given time. HPMC also argues that even if Ekin could establish a common policy of not providing proper rest and meal breaks, she has not identified a common method of proof to determine who took breaks, when, and why.

As the Court already determined, HR Policy 504 does not provide the requisite common question sufficient for class certification. And without that common thread, one must engage in individual inquiries regarding each putative class member to determine if, when, and why a nurse did or did not take all mandated breaks. As one district court aptly noted, "a plaintiff must do more than show that a meal break was not taken to establish a violation. Instead, he must show that the employer impeded, discouraged, or prohibited him from taking a proper break." *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641 (N.D. Cal. 2010). The crucial inquiry therefore "is the reason that a particular employee may have failed to take a meal break." *Id.* (finding for this reason that common issues did not predominate).

Neither does Ekin's argument that one could look to HPMC's payroll records to determine which putative class members were not provided with required rest and meal breaks help the predominance inquiry. Even assuming that the records are accurate, "the resources that would be expended on determining the reason for missed breaks would exceed those saved by classwide determination of the number of breaks missed. Assuming that the timesheets are accurate, it would take little time for the

/ / /

number of missed breaks to be established in separate actions." *Brown*, 249 F.R.D. at 587 (denying class certification).

The same holds true for each department's assignment sheets. The assignment sheets do not reflect why nurses missed breaks, how late the breaks were provided, whether a break was interrupted, or whether an employee waived a break. Several putative class members testified that they did not even consult the assignment sheets in determining when to take their rest and meal breaks. Without any documentary evidence to review, one would have to interview each class member to determine whether she missed breaks and the circumstances surrounding each discrete occasion. The Court therefore finds that common issues do not predominate over noncommon questions. Individual trials would also be the superior method of adjudicating each nurse's claims—not a class action.

**D.    Numerosity, typicality, and adequate representation**

Since the Court finds that Ekin has not established Rule 23's commonality requirement or that common questions predominate, the Court need not address the Rule's remaining requirements.

### V.    CONCLUSION

The Court finds that Ekin has not demonstrated Rule 23's requirements of ascertainability, commonality, or predominance. The Court consequently **DENIES** Ekin's Motion for Class Certification. (ECF No. 55.)

**IT IS SO ORDERED.**

October 25, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**